

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

**CASSANDRA SHELBY,**            )
                                 )
    Plaintiff,            )
                                 )
**vs.**                          )   Civil Action Number
                                 )   **7:12-cv-02540-AKK**
**SOCIAL SECURITY**              )
**ADMINISTRATION,**              )
**COMMISSIONER,**                )
                                 )
    Defendant.            )
                                 )

## MEMORANDUM OPINION

Plaintiff Cassandra Shelby ("Shelby") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Shelby.

### I. Procedural History

Shelby protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income benefits on March 27, 2009, alleging a disability onset date of March 7, 2009 due to cellulitis, a bladder and kidney infection, bad circulation, and foot problems. (R. 123-127, 147). After the SSA denied Shelby's applications, she requested a hearing before an ALJ. (R. 60, 62, 65-77). The ALJ subsequently denied Shelby's claims, (R. 8-21), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-5). Shelby then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 7.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

The ALJ properly applied the five step analysis and first determined that Shelby has not engaged in substantial gainful activity since March 7, 2009, and therefore met Step One. (R. 13). The ALJ also acknowledged that Shelby's diabetes mellitus, obesity, and cellulitis were severe impairments that met Step Two. *Id*. The ALJ proceeded to the next step and found that Shelby failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 14. Although he answered Step Three

in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Shelby

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can sit, stand, and/or walk with normal breaks for six hours in an 8-hour workday; and she is limited in her ability to push and/or pull in the lower extremities. She should never balance, but can occasionally climb, stoop, kneel, crouch, and/or crawl and she should avoid exposure to hazardous machinery and unprotected heights. She has mild to moderate pain.

(R. 14). With respect to the pain standard, the ALJ found that Shelby's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Shelby's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id*. at 15. As a result, the ALJ found that Shelby is capable of performing past relevant work as a teacher's aide, cook, and cashier. *Id*. at 17. Accordingly, the ALJ determined that Shelby is not disabled. *Id.*; *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

Shelby contends that the ALJ erred by failing to properly apply the pain standard, and weigh the medical evidence. Doc. 7. For the reasons stated more fully below, the court finds that the ALJ's decision is supported by substantial

evidence.

## A.     The Pain Standard

When a claimant bases a claim of disability, at least in part, on subjective representations regarding pain or other symptoms, the Eleventh Circuit employs a "pain standard" to determine the credibility of the claimant's statements.  This standard requires "evidence of an underlying medical condition" that is either (a) supported by "objective medical evidence that confirms the severity of the alleged pain arising from that condition," or (b) "of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt*, 921 F.2d 1221 at 1223.  Moreover, a claimant's subjective testimony regarding pain, if supported by the medical evidence, is sufficient to support a finding of disability.  *Id*.  Accordingly, an ALJ must articulate the reasons for discrediting a claimant's pain testimony and substantial evidence must support the reasons.  *Hale*, 831 F.2d at 1012.

Shelby contends that the ALJ applied the pain standard improperly by failing to (1) give an explicit and adequate reason for rejecting Shelby's testimony, and (2) find that Shelby's chronic stasis and edema constituted severe impairments.  Doc.7 at 8-10.  The court addresses each contention below.

### 1.     Explicit and Adequate Reason for Rejecting Shelby's Testimony

Contrary to Shelby's contention, the ALJ provided an explicit and adequate

reason for discrediting Shelby's subjective pain testimony. Specifically, the ALJ articulated that he discredited Shelby's pain testimony because "[Shelby's] daily activities suggest her symptoms and limitations are not as serious as alleged[,]" and Shelby's testimony is not supported by the objective medical evidence. (R. 15-16). After reviewing the record as a whole, the court finds that the ALJ's reasons are supported by substantial evidence and thus adequate under the pain standard.

        a.    *The Objective Medical Evidence*

The medical record supports the ALJ's finding. Shelby's record begins with testing performed at the Bibb Medical Center emergency department on March 8, 2009. (R. 209-10). Unfortunately, the record fails to explain why Shelby presented at the emergency department or the results of the test performed. *See id.* A few days later, Shelby presented at DCH Regional Medical Center with pain, erythema and swelling of her lower right leg. *Id*. at 213. The emergency department doctors admitted Shelby for seven days for infectious disease evaluation. *Id*. Ultimately, Dr. Albert T. White diagnosed Shelby with cellulitis[2] and discharged her with medication to treat the cellulitis and her diabetes. *Id*. at

---

[2] Cellulitis is "an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues and sometimes muscle . . . It is usually caused by infection of a wound, burn, or other cutaneous lesion by bacteria. . .but it may also occur in immunocompromised hosts[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 330 (Philadelphia: Saunders, 31st ed. 2007).

213, 226.  A few days later, Shelby visited Dr. Richard Kennedy at Whatley Health Services, Inc ("Whatley") with complaints of continued cellulitis.  *Id*. at 238.  Dr. Kennedy suggested a deep vein thrombosis (DVT) check, but Shelby refused.  *Id*. at 239.  Dr. Kennedy then instructed Shelby to stay off her leg as much as possible and keep it elevated to alleviate any persistent symptoms.  *Id*. Shelby followed up at Whatley twice in April 2009, and except for indicating "normal finding" under the section titled physical exam and a possible reference to chronic pain, the notes from those appointments are largely illegible.  *Id*. at 235, 237.

    After failing to seek further medical treatment for almost a year, Shelby returned to DCH in February 2010 for pain and swelling in her lower right leg, but left before seeing a doctor.  *Id*. at 253.  A month later, on March 7, 2010, Dr. Robert Heilpern performed a functional capacity assessment on Shelby.  *Id*. at 242-248.  After reviewing Shelby's medical history, Dr. Heilpern opined that Shelby could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk or sit for six hours during an eight hour workday, use her lower extremities to push and pull, and occasionally climb, balance, stoop, kneel, crouch or crawl.  *Id*.  Dr. Heilpern additionally noted that Shelby has no manipulative, communicative, or visual limitations and would only need to avoid

hazards like heavy machinery or unprotected heights. *Id*. Based on the record, Dr. Heilpern concluded that Shelby's statements regarding her symptoms were only partially credible because she was expected to be able to perform light work again within twelve months. *Id*.

Between July and November 2010, Shelby scheduled five follow up appointments at Whatley. *Id*. at 259, 261, 263, 264, 265, 267. However, she failed to show up for an appointment in September and the notes from the November appointment mention pain and swelling but are otherwise illegible. *Id*. at 263, 267. At the remaining three appointments, the doctors noted Shelby's history of cellulitis, diagnosed her with enuresis and pedal edema[3], prescribed a compression stocking, increased the dosage on some of Shelby's diabetes medicines, and scheduled a three month follow up appointment. *Id*. at 259, 261, 265.

Before her final appointment at Whatley in November 2010, Shelby returned to DCH in October. *Id*. at 255. Dr. Rafael Contreras ordered ultrasounds of Shelby's venous and arterial peripheral flow of her lower right extremity, noting "monophasic flow in the posterior tibial arteries and dorsalis pedis arteries of the

---

[3] Enuresis is urinary incontinence and pedal edema is localized swelling of the foot. DORLAND'S, *supra* note 2, at 600, 635.

right ankle and foot, suggesting hemodynamically significant runoff vessel disease in the right calf." *Id*.  Dr. Contreras also found a plantar calcaneal spur, but no fractures or other significant bony abnormalities.  *Id*. at 256.

Based on the court's review of the record, the court agrees with the ALJ that the medical record does not support a finding of disability and is consistent with the residual functional capacity provided.  While the record shows Shelby received treatment for cellulitis, diabetes, chronic statis and chronic edema, the record is also clear that Shelby's physicians successfully treated these impairments through prescription medications.  Likewise, although Shelby continued to suffer from recurrent swelling in her right leg (chronic edema), the last treatment notes from Whatley indicate that her treating physicians planned to treat the condition with medications and a compression stocking.  There is simply nothing in the medical record suggesting that Shelby's impairments would prevent her from working within the light to sedentary range. Accordingly, substantial evidence supports the ALJ's finding that the objective medical evidence does not support Shelby's subjective testimony of disabling pain.

      b.    *Shelby's Daily Activities*

Shelby also challenges the ALJ's findings related to her daily activities and how they discredit her pain testimony.  At the hearing before the ALJ, Shelby

testified that she cannot work a full day because she can only stand for about fifteen minutes or sit for three hours before experiencing pain in her foot and leg, that her right leg periodically swells, and that she experiences constant pain between a three or four on a ten point pain scale that rises to an eight or nine at least three days a week.  (R. 34, 39).  Due to this constant pain, Shelby stated that she can walk only half a block before the pain intensifies. *Id*. at 36-37.  To help alleviate the pain, Shelby takes her prescription medications and spends five out of nine hours a day sitting down with her leg elevated.  *Id*.  As it relates to household activities, Shelby testified that she does regular chores such as washing clothes, that she can carry a "big load" of clothes, and that her parents and four children who live with her provide substantial help with her other daily chores.  *Id*. at 37-38, 40.  Finally, with regard to her other impairments, Shelby testified that she takes medicine for diabetes but does not check her sugar levels every day, and that her enuresis is well controlled through prescription medicine.  *Id*. at 40, 45.

     Based on Shelby's testimony, the court finds that the ALJ's finding that Shelby's "daily activities suggest her symptoms and limitations are not as serious as alleged," *id*. at 15-16, is supported by substantial evidence.  As Shelby testified, and as the medical evidence establishes, many of her impairments are well controlled by a conservative treatment plan that primarily includes medications or

a suggestion that she keep her foot elevated when swollen. Additionally, Shelby's failure to seek treatment for almost a year between April 2009 and 2010 undermines her contention that she is suffering from disabling pain. Ultimately, although it is clear that Shelby may need to occasionally stretch or take breaks to alternate between sitting and standing, her reported daily activities do not support her contention that she cannot perform work at the light or sedentary level with normal breaks.[4] In fact, as Shelby acknowledges, she is able to work at least half a day on her normal days, *id*. at 39, which bolsters the vocational expert testimony that even with mild to moderate pain, Shelby can perform her past relevant work as a teacher's aide, cook and cashier, *id*. at 14, 17, 48. Based on this record, the ALJ's findings are supported by substantial evidence.

2.   Identifying Severe Impairments

As the final contention of error, related to her subjective reports of pain, Shelby claims that the ALJ erred in failing to find Shelby's chronic stasis dermatitis and edema severe. Both these impairments are inflammatory responses

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

to Shelby's other impairments, *see* DORLAND'S, *supra* n.3, at 500, 635, which are treated through prescription medicines. While these conditions may be chronic, there is nothing in the record indicating that they are severe impairments, i.e. conditions that "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Therefore, the ALJ committed no error. Alternatively, the ALJ's failure to find these impairments severe is harmless error because he considered all of Shelby's impairments in determining to discredit Shelby's subjective testimony and assign a light work RFC. *See* (R.14-17). Accordingly, the ALJ properly applied the pain standard and his decision to discredit Shelby's pain testimony is supported by substantial evidence.

## B. Weighing Medical Opinions

Finally, Shelby contends that the ALJ improperly weighed the medical opinions by giving weight to Dr. Heilpern and by "creat[ing] his own standards for evaluating medical opinions." Doc. 7 at 18. These contentions are also unavailing. Under 20 C.F.R. § 404.1527, the ALJ may grant a state agency consultant's opinion significant weight based on several factors including consistency with the record as a whole and specialization of the examiner. 20 C.F.R. § 404.1527(e)(iii). As the ALJ articulated, Dr. Heilpern is considered a specialist in disability evaluations under 20 C.F.R. § 404.1527(f)(2)(i), and his findings are

consistent with the objective evidence provided by Shelby's treating physicians. Although the medical record was not complete at the time of Dr. Heilpern's review, the evidence supplied after his examination does not contradict his findings. In fact, the evidence from Whatley provided after Dr. Heilpern's assessment further show that Shelby's impairments are relatively easily treated with diabetes and pain medicines. Therefore, the ALJ did not err in granting considerable weight to Dr. Heilpern's opinion.

The ALJ also did not create his own standard when he noted the absence of any statements by Shelby's treating physicians regarding her disability status. Although such opinions about disability are not binding under 20 C.F.R. §§ 404.1527(d) and 416.927(d), the inclusion of any such information in the record would not be irrelevant in a disability determination as Shelby suggests. *See* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). More importantly, the ALJ did not state that Shelby's failure to provide an opinion from a treating physician regarding her disability status was determinative in her case. The ALJ stated instead that "[a]lthough no express opinions were offered by the treating physicians, *at no time was there an indication that the claimant had an impairment or combination of*

*impairments so 'severe' as to be disabling* or that she was disabled." (R. 16) (emphasis added). In other words, the ALJ was explaining that Shelby's medical records from her treating physicians failed to show that her impairments rose to the severe level necessary for a disability finding. As discussed previously, the medical evidence supports the ALJ's finding that Shelby can perform work within the light or sedentary range with regular breaks. Accordingly, the ALJ's decision is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Shelby is not disabled is supported by substantial evidence and proper legal standards were used in making this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 31st day of January, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE